IN THE UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| COLD STONE CREAMERY, INC. and <br> COLD STONE CREAMERY LEASING <br> COMPANY, INC., <br> <br> Plaintiffs, <br> <br> v. <br> <br> MIXIN TOGETHER, INC., JTITI, INC., <br> WON LEE AND KYUNG LEE, <br> <br> Defendants. | Case No. 09-CV-50217 |

## COMPLAINT

Plaintiff Cold Stone Creamery, Inc. ("CSC") and Cold Stone Creamery Leasing Company, Inc. ("CSCLC"), by their attorneys, as and for their Complaint against Defendants states as follows:

## NATURE OF THE CASE

1. This is an action for preliminary and permanent injunctive relief to enjoin Defendants' unlawful misuse of certain proprietary CSC names and marks and breach of their contractual post-termination obligations. Until recently, Defendants were CSC franchisees pursuant to written franchise agreements granting them a limited license to use CSC's proprietary names and marks, including its federally-registered trademarks, in connection with the operation of two authorized Cold Stone Creamery® stores in Rockford, Illinois (store #1121) and Geneva, Illinois (store #399). In July 2009, Defendants' unilaterally closed and abandoned their Cold Stone Creamery franchise for store #399 triggering the termination of the franchise agreements for stores #399 and #1121. Notwithstanding the termination of those agreements, Defendants have failed to

comply with their post-termination obligations under the franchise agreements and sub-leases, including their obligations to de-identify their former franchised stores, to cease and desist from any and all use of CSC's names and marks, to return all confidential and proprietary information to CSC and to surrender possession of the franchised stores' premises. As a result of Defendants' actions, CSC has been and, unless the injunctive relief sought herein issues, shall continue to be irreparably harmed by Defendants' misconduct.

**Parties**

2. CSC is an Arizona corporation with its principal place of business in Scottsdale, Arizona. CSC is a franchisor of independently owned and operated restaurants serving ice cream, yogurt, cakes, shakes and related products, with hundreds of locations nationwide, operating under the name "Cold Stone Creamery®."

3. Cold Stone Creamery Leasing Co., Inc. is an Arizona corporation with its principal place of business in Scottsdale, Arizona.

4. Upon information and belief, JTITI, Inc. is an Illinois corporation with its principal place of business in Rockford, Illinois.

5. Upon information and belief, Mixin Together, Inc. is an Illinois corporation with its principal place of business in Rockford, Illinois.

6. Upon information and belief, Won Lee a citizen and resident of Illinois residing in Rockford, Illinois and is also known as Hi Sook Lee.

7. Upon information and belief, Kyung Lee a citizen and resident of Illinois residing in Rockford, Illinois and is also known as Jamie Lee.

**Jurisdiction And Venue**

8.  The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states and wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9.  Venue is proper in this Court under 28 U.S.C. § 1391, in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

10.  Venue is proper in this Division because Defendant's franchised store which is the subject of this action is located in Rockford, Illinois, Winnebago County, Illinois.

**The CSC Marks**

11.  To identify the source, origin and sponsorship of authorized COLD STONE CREAMERY® stores offering unique ice cream, yogurt and related products and services ("CSC Stores"), and to distinguish those products and services from those established, made, offered and sold by others, CSC, its predecessors and franchising affiliates, and authorized CSC franchisees, have extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to "COLD STONE CREAMERY," "COLD STONE," "CREATIONS COLD

3

STONE ORIGINALS" and "APPLE PIE A LA COLD STONE" (collectively, the "CSC Marks").

12. The CSC Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the CSC Marks continue in full force and effect.

13. CSC is authorized to use and to license the below-listed trademark and service mark registrations issued by the United States Patent and Trademark Office for CSC trademarks and service marks, which have not been canceled, are now and have been valid at all times pertinent, and are in full force and effect.

| TRADEMARK | Registration Number |
|---|---|
| COLD STONE CREAMERY | 3221340 |
| COLD STONE CREAMERY | 3103205 |
| COLD STONE CREAMERY | 3161605 |
| COLD STONE CREAMERY | 2779570 |
| COLD STONE CREAMERY | 2779567 |
| COLD STONE CREAMERY | 2779566 |
| APPLE PIE A LA COLD STONE | 2724383 |
| COLD STONE CREAMERY | 2779569 |
| COLD STONE CREAMERY | 2779568 |
| COLD STONE CREAMERY | 2779565 |
| COLD STONE CREAMERY | 2779564 |
| COLD STONE CREAMERY | 77678922 (serial #) |
| COLD STONE CREAMERY | 77700382 (serial#) |
| COLD STONE CREAMERY | 77678555 (serial#) |
| COLD STONE | 2691919 |
| CREATIONS COLD STONE ORIGINALS | 2789528 |

4

| COLD STONE CREAMERY | 2542783 |
| COLD STONE CREAMERY | 1968506 |

14. Notice has been given to the public of the registration of the CSC Marks as provided in 15 U.S.C. § 1111 and all legal requirements have been complied with to ensure that CSC and its authorized licensees remain the exclusive users of the CSC Marks. CSC, its predecessors and franchising affiliates, and authorized CSC franchisees, have continuously used the CSC Marks in interstate commerce in connection with the promotion, sale and franchising of CSC Stores and the promotion and sale of the products and services they offer throughout the United States and worldwide, since at least the date of their registration.

15. CSC is the owner and licensor of the CSC Marks for use in connection with the CSC franchise program. Pursuant to franchise agreements entered into by and between CSC and its authorized and approved franchisees, CSC has granted franchises to qualified persons to own and operate CSC Stores, together with a limited license to use the CSC Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by CSC in the franchise agreement.

16. CSC and its authorized franchisees have extensively advertised and promoted CSC Stores and the products and services they offer under the CSC Marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by CSC and its authorized franchisees under the CSC Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

5

**The Parties' Franchise Agreements and Sub-Lease Agreements**

17. On or about October 30, 2001, CSC, as franchisor, and JTITI, Inc., as franchisee, entered into a written franchise agreement (the "Store #399 Franchise Agreement") pursuant to which Defendants were granted a franchise to operate a CSC Store in Geneva, Illinois for an initial ten (10) year term. JTITI, Inc. also entered into a Sub-Lease with Cold Stone Creamery Leasing Co., Inc. Won Lee and Kyung Lee are the personal guarantors of the Store #399 Franchise Agreement and the Sub-Lease.

18. On or about September 23, 2003, CSC, as franchisor, and JTITI, Inc., as franchisee, entered into a written franchise agreement (the "Store #1121 Franchise Agreement") pursuant to which Defendants were granted a franchise to operate a CSC Store in Rockford, Illinois for an initial ten (10) year term.

19. Defendants Won Lee and Kyung Lee are the personal guarantors of JTITI, Inc.'s obligations under the Franchise Agreement for Store #1121. Defendants Won Lee and Kyung Lee also agreed to be specifically bound by the covenants not to compete contained in the Franchise Agreement for Store #1121.

20. On or about September 8, 2004, CSCLC entered into a lease with Perryville Crossings, LLC for the premises located at 653 South Perryvillle in Rockford, Illinois where Store #1121 was to be located.

21. Pursuant to a written Sublease between CSCLC and JTITI, Inc., JTITI, Inc. is the sub-lessor of the premises for Store #1121 located at 653 South Perryvillle in Rockford, Illinois. Pursuant to the terms of the sublease, JTITI, Inc. agreed to be bound by the terms of the lease between CSCLC and Perryville Crossings, LLC.

6

22. On or about February 22, 2005, JTITI, Inc. assigned its interest in the Franchise Agreement for Store #1121 to Mixing Together, Inc. ("MTI"). MTI is owned in whole or in part by JTITI, Inc., Won Lee and/or Kyung Lee.

23. In exchange for the right to own and operate two CSC Store franchises, defendants agreed, inter alia, to operate their franchise in accordance with the standards set forth in the Franchise Agreements and the CSC Operating Manuals and to pay CSC certain monthly royalty fees and advertising fees.

24. Defendants expressly acknowledged in the Franchise Agreement, CSC's exclusive rights in the CSC Marks. Defendants agreed, inter alia, not to use the CSC Marks or any variation thereof, other than in accordance with the provisions of the Franchise Agreement or to do anything that would harm the good will associated with the Marks. Defendants also agreed that, upon termination of the Franchise Agreements for any reason, defendants would, inter alia, cease to hold themselves out as franchisees of CSC and cease to use the CSC Marks in any form.

25. Defendants also agreed that, upon termination of the Franchise Agreement, they would immediately assign the business telephone numbers for their former franchised CSC Store to CSC. Defendants also committed to, upon termination of the Franchise Agreement, immediately pay all sums or amounts due to CSC, as well as to return to CSC all operating manuals and other confidential and proprietary information and instructions and recipes provided to them in connection with the operation of their former CSC Store and all materials containing the CSC Marks.

26. Defendants also agreed that, upon termination of the Franchise Agreement, they would not sell or otherwise transfer any of their CSC Store fixtures and

equipment against which CSC has a right to set off against for ant amounts due and owing to CSC by Defendants.

27. Defendants also agreed that, upon termination of the Franchise Agreement, they would not engage in a competing business for a period of one year.

28. Defendants also agreed to pay attorneys' fees incurred by CSC in connection with the enforcement of Defendants' CSC's rights under the franchise agreement and the trademarks.

29. Defendants also agreed that, in the event of termination of Defendants or a default by Defendants under the Lease for Store #1121, CSCLC would be entitled to, among other things, immediate possession of the premises for Store #1121.

30. Defendants also agreed to pay attorneys' fees incurred by CSCLC in connection with enforcing its rights under the Sublease for Store #1121.

31. CSC has fully performed all of its obligations under the Franchise Agreement, the Lease and the Sub-Lease.

### **Termination Of The Franchise Agreements and Sub-Leases**

32. In June of 2009, Defendants ceased paying rent for CSC Store #399. And, on or about July 29, 2009, Defendants unilaterally abandoned their franchised business for Store #399. The landlord for Store #399 subsequently instituted an unlawful detainer action against CSCLC and Defendants to regain possession of the premises for Store #399. CSC terminated the Franchise Agreement for Store #399 shortly thereafter.

33. Defendants' abandonment of Store #399 triggered Section 16 of the Franchise Agreement for Store #1121. Pursuant to Section 16, Defendants' Franchise Agreement for Store #1121 was cross-terminated based upon Defendants' abandonment

of Store #399 and damage to the good will associated with the CSC Marks caused by Defendants abandonment of Store #399. Upon information and belief, Defendants have ceased paying rent to Peryville Crossings, LLC for the Store #1121 premises yet still have possession.

34. Upon termination, Defendants were required to comply with their post-termination obligations under the Franchise Agreement and the Sub-Lease, including those enumerated in the above paragraphs.

**Defendants' Breaches Of Their Post-Termination Obligations**

35. Despite the termination of the Franchise Agreement for Store #1121 and the Sub-Lease for #1121 and CSC's demands that Defendants comply with their post-termination obligations, Defendants have continued to operate using the CSC Marks and holding themselves out as a CSC Store at the location of their former CSC Store #1121.

36. Defendants have also violated other post-termination obligations contained in their written Franchise Agreement and Sub-Lease with CSC. Specifically, Defendants have refused to (i) assign the telephone numbers for their former CSC Store to CSC; (ii) return to CSC its proprietary equipment and all operating manuals and other confidential and proprietary information and instructions and recipes provided to them; (iii) return all materials bearing the CSC logos and Marks; and, (iv) comply with their covenant not to compete.

37. Defendants have also violated their post-termination obligations contained in their Sub-Lease for Store #1121, by among other things, refusing to surrender the premises for the Store to Plaintiffs.

38. As a direct and proximate result of Defendants' actions, Plaintiffs have been and are likely to be irreparably harmed and substantially injured in their business, including goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

39. Plaintiffs have no adequate remedy at law because the CSC Marks are unique and represent to the public CSC's identity, reputation and goodwill, such that damages alone cannot fully compensate CSC for defendants' misconduct.

40. Unless enjoined by the Court, Defendants will continue to use and infringe the CSC Marks and CSC's confidential information and maintain control of the premises for Store #1121 – all to CSC's irreparable injury. This threat of future injury to CSC's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued use of the CSC Marks and to ameliorate and mitigate CSC's injuries.

## Count I—Trademark Infringement

41. CSC repeats and realleges ¶¶ 1 through 40 of its Complaint as and for this ¶ 41, as if fully set forth herein.

42. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the CSC Marks, and are likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

43. As a direct and proximate result of Defendants' infringement, CSC has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

44. CSC has no adequate remedy at law because the CSC Marks are unique and represent to the public CSC's identity, reputation, and goodwill, such that damages alone cannot fully compensate CSC for Defendants' misconduct.

45. Unless enjoined by the Court, Defendants will continue to use and infringe the CSC Marks, to CSC's irreparable injury. This threat of future injury to CSC's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the CSC Marks, and to ameliorate and mitigate CSC's injuries.

## Count II—Unfair Competition

46. CSC repeats and realleges ¶¶ 1 through 45 of its Complaint as and for this ¶ 46, as if fully set forth herein.

47. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

48. As a direct and proximate result of defendants' infringement, CSC has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

49. CSC has no adequate remedy at law because the CSC Marks are unique and represent to the public CSC's identity, reputation, and goodwill, such that damages alone cannot fully compensate CSC for Defendants' misconduct.

11

50. Unless enjoined by the Court, Defendants will continue to use and infringe the CSC Marks, to CSC's irreparable injury. This threat of future injury to CSC's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the CSC Marks, and to ameliorate and mitigate CSC's injuries.

### Count III—Breach Of Franchise Agreement—Injunctive Relief

51. CSC repeats and realleges ¶¶ 1 through 50 of its Complaint as and for this ¶ 51, as if fully set forth herein.

52. Defendants have also violated the post-termination obligations contained in their written Franchise Agreements with CSC. Specifically, Defendants have refused to (i) assign the telephone numbers for their former CSC Store to CSC's designee; (ii) return to CSC its proprietary equipment and all operating manuals and other proprietary and confidential information and instructions and recipes provided to them (iii) return all other materials bearing the CSC logos and Marks; and, (iv) comply with their covenants not to compete.

53. Defendants' failure to comply with their post-termination obligations constitutes a material breach of the Franchise Agreement. CSC has fully performed all of its obligations under the Franchise Agreement.

54. CSC has no adequate legal remedy for defendants' breach because its damages, including harm to its goodwill, are difficult to quantify, and therefore monetary damages alone cannot adequately, completely and fully compensate CSC for the harm caused by Defendants' misconduct.

55. Unless enjoined and ordered by the Court to perform their post-termination obligations under the Franchise Agreement, Defendants' breach will continue to cause CSC's irreparable harm.

### Count IV—Breach Of Sub-Lease—Injunctive Relief/Unlawful Detainer

56. Plaintiffs repeats and realleges ¶¶ 1 through 55 of its Complaint as and for this ¶ 56, as if fully set forth herein.

57. Defendants have also violated the post-termination obligations contained in their written Sub-Lease with CSCLC. Specifically, Defendants have refused to surrender the Store #1121 premises for their former franchised business.

58. Defendants' failure to comply with their post-termination obligations constitutes a material breach of the Sub-Lease. Plaintiffs have fully performed all of their obligations under the Sub-Lease.

59. Plaintiffs have no adequate legal remedy for defendants' breach because its damages, including harm to its goodwill, are difficult to quantify, and therefore monetary damages alone cannot adequately, completely and fully compensate Plaintiffs for the harm caused by Defendants' misconduct.

60. Unless enjoined and ordered by the Court to perform their post-termination obligations under the Sub-Lease, Defendants' breach will continue to Plaintiffs cause irreparable harm.

### Prayer For Relief

WHEREFORE, CSC respectfully prays for the following relief against Defendants:

A.     A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

1. Using the CSC Marks or any trademark, service mark, logo or trade name that is confusingly similar to any of the CSC Marks;

2. Otherwise infringing the CSC Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any of their products or services as those of CSC or CSC authorized franchisees;

4. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with CSC and its franchisees or any of CSC products or services; and

5. Unfairly competing with CSC or its franchisees, in any manner.

B.     An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of Defendants, their agents, servants and employees, and those people in active concert or participation with them bearing any of the CSC Marks, and all plates, molds, and other means of making the same, if any, be delivered to CSC at Defendants' cost;

C.     That Defendants be required to promptly eliminate all advertising under the CSC Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

D.     Preliminary and permanent injunctive relief ordering defendants to comply strictly with their post-termination obligations to:

1. Assign the telephone numbers, for their former CSC Store to CSC;

2. Return to CSC its proprietary equipment and all operating manuals and other confidential and proprietary information and instructions and recipes provided to them;

3. Return all stationery and other materials bearing the CSC logos and Marks;

4. Not to be associated, either directly or indirectly, as an employee, proprietor, partner, stockholder, agent, principal, owner, or other participant, with a competing business within a for a period of one year;

5. Not solicit business or make contact with customers of a CSC Store for any competitive business purpose; and,

6. Not persuade any employee of a CSC Store to discontinue their employment;

7. Surrender the premises for Store #1121 to Plaintiffs; and,

8. Not sell or otherwise transfer any of their CSC Store fixtures and equipment.

E.   That Defendants be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

F.   That Defendants account and pay over to Plaintiff all gains, profits and advantages derived by them as a result of their infringement of the CSC Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

G.   That Defendants pay to Plaintiff such damages as Plaintiff has sustained by reason of said trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for plaintiff for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

H.  An award of costs and expenses, including reasonable attorneys' fees incurred by Plaintiffs in connection with this action as provided for by the Franchise Agreement and statute; and

I.  Such other and further relief as the Court deems just and proper.

Dated: September __, 2009            Respectfully submitted,

**COLD STONE CREAMERY, INC. AND COLD STONE CREAMERY LEASING CO., INC.**

 /s/ Alice A. Kelly
Alice A. Kelly (#6281897)
The Kelly Law Group, LLC
33 West Ontario Street, Suite 26H
Chicago, IL 60654
312.451.6211
312.265.1157 (fax)